Case number 22-3042, United States of America v. Couy Griffin, Avalanche. Ms. Wright for the Avalanche, Ms. Lenners for the Eppley. Good morning, Ms. Wright. You may proceed when you are ready. Thank you. May it please the Court, on behalf of Ms. Wright, on behalf of Mr. Couy Griffin, I'd like to reserve two minutes for rebuttal. Mr. Griffin was convicted of one misdemeanor count of knowingly entering or remaining in any, quote, restricted building or grounds, a restricted building or grounds being defined as a post-accordant off or otherwise restricted area, and two, where a Secret Service protectee is visiting. And I believe it may be helpful for me to use the shorthand RBG as a way to distinguish restricted building or grounds, which is a congressionally defined term of art, from the words restricted area, which are also in the statute. The government's proof was insufficient to prove this entering and remaining charge beyond a reasonable doubt, and it was insufficient for three independent reasons. One, the government failed to prove that any area Mr. Griffin entered had the status of an RBG at the time he entered, where the government did not prove that such area was, at that time, post-accordant off or otherwise restricted. Second, even if this Court were to accept the notice, the government concedes that Mr. Griffin had to know the area was an RBG, and the government failed to prove that Mr. Griffin knew the area was otherwise restricted at the time he entered. And third, and I think number three is the easiest way to decide this case, even if there were sufficient evidence that Mr. Griffin knew an area he entered was otherwise restricted, the government failed to prove that he knew the other fact necessary to qualify the that it was an area where a Secret Service protectee was or would be temporarily visiting. And any one of these insufficiencies requires the entry of a judgment of acquittal for Mr. Griffin. I could just go through them. Why shouldn't we treat the definitional provision as a provision that's in support of federal jurisdiction? I mean, trespass is typically a state law offense, and under FEOLA, which to my mind may be the closest case, and I know it wasn't cited in the briefing here, but under FEOLA, the question was whether the knowledge requirement applied to assault victim status as a federal law enforcement agent, the person was undercover. And the Court held in that case that the knowledge requirement, well, that there was no scienter requirement extending to the federal officer's status of the victim. And I wonder why we shouldn't think of this statute in the same way. I am fairly certain that the word knowingly is not in 111, which is FEOLA. I think you're right. Yeah. So I think that's the answer to that. And here, Congress was only interested in doing this at all. This is not a jurisdictional hook. This is something they want to do. They want to keep people out of areas that they mark off. It's only because of the three reasons that the White House, the protectee, et cetera, that they care at all to do it. I mean, it's the reason. It's not a hook. It's not something they want to criminalize anyway and have to find a way to bring it in federal jurisdiction. No, but as I said, ordinarily trespass, entering restricted areas is typically dealt with under state law. And if this provision were unavailable, then there's not another way that Mr. Griffin could be charged for entering a restricted area under federal law. And I don't know, would D.C. trespass law apply to crossing a keep out sign? I mean, I know you have a challenge to whether, in fact, the grounds were restricted within the meaning of the statute. But assuming that they were, there's not an offense other than the one charged. I'm not aware of a federal offense. I think through 3056, if he were to interfere with an officer, a Secret Service agent or something like that could be charged. I believe that before 1752 was, before, for example, the White House was explicitly put in, it's my understanding that they used to prosecute that under the D.C. code. Don't know if that could have been, I don't know. As a trespass? I think as a D.C., some sort of D.C. trespass. Going into White House grounds. Yes, that's my understanding in that part of the purpose of putting the White House in this federal statute was so they wouldn't have to do that. But I don't know if that would be true on the Capitol grounds. One thing we look to in positing mens rea requirements is whether the element is necessary to separate wrongful from innocent conduct, right? And this seems like a little bit of an intermediate case to the extent going into a posted, cordoned off, or otherwise restricted area is wrongful conduct. You don't need anything else to establish wrongful conduct. But the presence of a Secret Service, person protected by the Secret Service seems to make the wrongful conduct a fair amount worse. So how do we think of that kind of situation? Right, well, that would be assuming that he had to know that. Yeah, I'm asking, the question is whether we should extend the knowingly adverb all the way down to that element. Well, again, we would say it isn't being extended. I think that applied. Yeah, but the point here, I think the bigger point is that I don't think that analysis that Your Honor is talking about actually applies when the plain text is when the modification is as directed as it is here. This isn't a case where a presumption is being applied. No, I understand. You have a grammar argument that, right, just the adverb applies to the direct object, which is grounds. Grounds is modified by a bunch of singular adjectives that precede it and later adjectival phrases that follow it. And you can't distinguish between those two. It's a matter of grammar. Right, and it's a term of art that's defined that you simply pop in. You don't, you're not, you know, you're not extending knowingly to elsewhere in the statute. I think the Elizalde opinion that we submitted with our 28-J letter, you know. That was the one Judge Nichols just decided? Correct, on Friday. That, I think, explains all of that, that we're not, you know, buttresses our argument that we're not extending it at all and also addresses the point Your Honor is making about otherwise innocent conduct and how that really isn't a factor. That's not something the court even needs to consider, you know, here. But, I mean, if that were true. But, I'm sorry, doesn't it cut against you that entering a posted cordoned off or otherwise restricted area is wrongful conduct? So that would distinguish this case from the McFadden case, from a series of cases with the Rahif and Staples where that without the knowledge of the gun being a machine gun or the person being an alien or, I'm trying to remember the other one, the person being, anyway, that those are, you know, the line there without the knowledge is that you're engaging in innocent conduct and the knowledge is the thing that ensures that a person is being punished only for culpable conduct. Well, I would say first, Flores-Figueroa is an example of where the court applied the knowledge, it said, unauthorized use of a identification and that is already wrongful, wrongly using an identification. But the phrase tacked on at the end, belonging to the person of another, they nevertheless extended that to that even though it was already wrongful to be using another person. I mean, to be using, I think it's fraudulent identification, but it was in some way they defined identification in a way that was already wrongful, but they wanted to specify that it had to have someone else's name on it and that part was added on. But again, I think that the court uses that rule when it's left with, you know, contextual clues or it's something it's trying to look at, it's moving on to congressional intent and I don't think you do that here where the plain text, I mean, it just says that the government admits that knowingly modifies the term restricted building or grounds. Right, and you've, I think, very effectively argued in your brief that restricted building or grounds is a term of art, but if we don't agree with you, then you lose, right? No. You have to sort of, that's how you get to the separate definitional section and carry the knowledge over to it. Well, I would say Rahafe is good for us, also Flores-Figueroa. I think we could, we went under Flores-Figueroa even without the idea that it's a definition, but I mean, it clearly is a definition. So I, you know, we don't even get there, but if we did, we would still be relying on cases like Rahafe and Flores-Figueroa primarily, I think, as the reason why we should think that Congress meant this to be included in the knowing. But here, as in Feola, the definition identifies three different circumstances in which there's a distinctive federal interest. So it limits the entry into restricted building or grounds to those that are going to be subject to prosecution federally for that subset. Well, I mean, they're defining a crime that they want to punish, and the crime is getting in a restricted area where a protectee is. And I mean, that is the crime. Like I said, it's not just like, oh, we want to prosecute you for going in an area, and so this is like a jurisdictional hook. And again, Feola, I understand, and if the word knowingly is not in Feola, I just don't see what we can draw from that at all, because there they were just having to look at, like, what do we think Congress intended? And here we know what Congress intended. The government's admitted that it modifies this term. And I do think the McFadden case is directly analogous, because there the term controlled substance was defined not only in a separate section, you had to go two sections away to find it, and then you had to go through a list of schedules that was like, you know, three pages long. And they said, yes, you have to prove that he knows that something, that substance he has is one of the substances. He has to know it is a substance. I mean, one way of understanding that is, as the court says, either he has to know that it is, in fact, a substance that is controlled, even if he doesn't know about the control system, or he has to know that it's correct under the control system. And that would, either of those effectively distinguishes it from, let's say he thinks it's heroin, but it's actually, you know, ginseng powder or something. But so I want to go back, though, to your restricted, what makes it restricted? And you talk about how it has to be, it has to be demarcated in a way that's similar, it has to be posted, cordoned off, or otherwise restricted. And otherwise, tells us that it has to be in a way comparable to the words that preceded. So comparable, giving comparable notice and publicly demarcating it in that way. And we would rely on, the government says, Fisher's definition of otherwise controls, but Fisher explains why it's actually the gay, not Fisher, that is relevant here. And so I don't think there can be much dispute that the word otherwise is linking back to those two. And what does that get you? Well, those two, a posting and cordoning off is obviously the purpose of those is to notify the border. I mean, it is saying like, you'd line up police, that's a cordoning off, you post notices. So it's a temporal point that because the most, as I understand it, the most typical way that people are informed that a Secret Service protectee is present is just Secret Service agents telling them. So it's in some very obvious way, not analogous to posted or cordoned off, which is typically done with signs or fencing people. A moving group of people telling you is very dissimilar in some way, but you're using it to say that it has to temporarily be at the moment of entry. And at the moment, at the place and the time. And I do think a Secret Service agent telling you what would otherwise be on a sign. It's materially analogous. It's the same. I mean, the point is you have to tell them and you could tell them via a bullhorn giving an civil disobedience things happening. At least they get the bullhorn and they say, you know, do not cross the street. If you cross the street, you will be arrested. And how do you respond to the hypotheticals or the reality of people who get there first, removing the barriers and people who follow on, who are well aware that they're entering an area that's restricted, but don't see the barriers because they've been shoved aside? Is that not prohibited by the statute? I mean, I take it that's your argument. That's not prohibited by the statute because it doesn't give the sufficiently contemporaneous notice. Well, our position, of course, is that Mr. Griffin was so far behind that he does not, is not in the category you're talking about of knowing. Well, I understand what you're saying is there were some people who, although they personally didn't knock them down, saw them being knocked down and followed along. And I would say if those people are seeing that it is a line and they are pushing the line back, even if they're 10 rows back, but they are part of the push, they are attempting to enter a restricted building or ground. We would get less if you turn the volume down slightly. Sorry. I was told to be close, so I may be talking too loud. We are upgrading the audio system, and so we're still in early days of fine-tuning it, but we can hear you quite clearly. Okay, good. So the people that actually break through the line, they actually enter and remain. But the people that are pushing behind them and see what's happening, those people are attempting to enter and remain. They're just not the ones that break through, but they're pushing the line back. But the people like Mr. Griffin, who was at the Air and Space Museum at the time, I mean, passing the Air and Space Museum, he wasn't in the museum, at the time that the fencing is being ripped down, he doesn't know it all. So, I mean, that's how I would distinguish it. I mean, seeing it versus not seeing it, being aware. And I want to step back a second on this statute. And it's not an ordinary trespass statute. It doesn't criminalize the crossing of existing public or private, or any sort of property line or boundary that pre-exists. It gives law enforcement this extraordinary power to carve out, like pop-up zones of protection that are moving. And because of that, they can create this zone within any public or private property, even including, as here, a First U.S. Capitol grounds. I have a question about standard of review. You raise an argument that the evidence was insufficient. Aren't there sort of two components to your argument? And one is interpreting 1752, and the other is sufficiency of the evidence. And do we review the district court's interpretation of the statute for plain error? No, because I believe our interpretations were put forward and rejected. The court explicitly ruled, we have raised two legal mistakes. One was the one about whether we have to know the protectees present. That was raised, ruled on, and rejected. The other argument, we raised the canons of statutory construction and argued that otherwise restricted meant comparable notice. And although the judge did not explicitly reject that, he found that Mr. Griffin had entered the restricted area when he crossed the Olmstead Wall, even while finding that that area was not, at that time, posted. So he was applying an incorrect legal standard. He also found that Mr. Griffin was aware that the area was restricted. And I know you contest that. Yes. But he did find that. But he found that not at the Olmstead Wall. He found that by the time he was at the stage. So he really does find that he's entering the area at the wall, even though it's not marked, but he doesn't know he's entered it until later. So I guess the standard review question is, we see these two legal errors as akin to erroneous jury instructions, which were preserved. But the court doesn't even, it wouldn't remedy here because the evidence isn't sufficient under the correct standard. The court should remand for entry of judgment of acquittal on any one of the three arguments we raise. Why is, under your interpretation of knowingly, why is the evidence legally insufficient? I mean, everyone there knew the vice president was in the Capitol. That was the whole point of the certification proceeding and the protest. On the knowledge element of the protectees' presence, you're asking factually. I'm sorry? I'm saying that you're asking factually on the protectees' presence. It seems to me that's a litigable issue under your interpretation. Well, I would say Mr. Griffin is very uniquely situated on that particular factual issue because we know that at 1.45 p.m., 45 minutes before he ever entered, he was under the mistaken impression that the certification was over. And also before he entered, you know, I'll just say when did he, sorry, when did he enter? 2.31. And we know that at least as of 1.45. I mean, he's saying it at 1.45. But I mean, I guess, but the point is, Do you think a trier of fact could include he thought the vice president was probably still in the Capitol? Well, I would say there's zero evidence, really, that he knows that he's in the Capitol. And the inference is, I mean, okay, I would say it's conceivable, one could conceive that he might think that Vice President Pence would finish his duties there and hang out for 45 minutes, even though. Maybe. I mean, maybe he really thinks it was certified and vice president gets the heck out as soon as he can, and he's not there. Maybe 45 minutes isn't that long. Maybe he thinks he's under the capitol. Yeah, no, I just has an office at the Capitol. And if this is certified, this is the end of his duties and true, perhaps under I would just say that you could conceive that he could think that especially in normal circumstances. But having it be a possibility doesn't mean that a jury could find it beyond a reasonable doubt when there's all these counter inferences. And I would say even in normal circumstances, the vice president's movements are quickly controlled. I agree he has an office there. But these were not normal circumstances. You anyone would expect that with the capitol being surrounded, that the Secret Service is going to whisk him out of there. You know, by the time he's crossing the wall to a top seat by the time he crossed the wall, he had in fact been whisked out to a top secret location that no one knew where it was. So the idea that Mr. Griffin knew beyond a reasonable doubt that he was even only the detail at this point knows whether he's even on or off the grounds. And in fact, it wasn't until this case that the Secret Service was forced to reveal where he was. So the idea that Mr. Griffin knew he was on the Capitol grounds when no one knew where he was. That's the point. He was under attack. The crowd had been inflamed by a tweet about three minutes. No, I guess it was about seven minutes before he crossed over. It said Mike Pence didn't do what needed to be done, didn't have the courage. So the Secret Service is not going to let him stick around. And I would say. But I mean, the members of the crowd were chanting, saying things as if they were speaking to Mike Pence in the building. And so there's there is evidence. A couple points to that. I mean, they aren't under the misimpression necessarily that he is. Protesters yell at the White House. They yell at the Capitol. They yell at people. Everyone understands they don't mess aren't really talking to the person, but also to the extent they are yelling these threatening things directing to Mike Pence. All the more reason that no one would think Secret Service would allow him to stand. And I would say that Inspector Hawa, there is testimony on this that she said that the Secret Service has to move protectees when a security perimeter is breached and they have to act before exit options are cut off. So that's evidence that that raises an inference that they're getting him out of there. And I also and that she also said and there was no evidence that the loading dock was actually where they wanted him. She admitted that she referred to the loading dock as a, quote, secure location only because it was more secure than where he was before in the office. And we now know that he did end up staying within the yellow line, but only because he refused to get in the car. The Secret Service tried to get him off the grounds as any reasonable person would think they would. And he had his did not know because he thought it was over. I just have one clarifying question about standard review. You say the arguments were preserved, but wasn't the motion judgment of acquittal in the district court on the grounds that Vice President Pence was not there temporarily because he actually has an office? He did make that argument. And that's different from the I'm fairly confident that the words that the trial counsel said can be were a general motion, at least at one point. And I think Judge McFadden assured him he was trying to make some arguments and saying, we need to resolve these now. And Judge McFadden said, no, don't worry, I'm going to wrap this into my bench ruling. And everything is preserved. I thought I thought he said something to that effect because it was a little confusing. Like, what's the difference between the verdict and the MJOA ruling? And I thought Judge McFadden made clear, like, you've preserved everything. Don't worry about it. So and he certainly had preserved these legal arguments. So. So we've taken you way over time, but we will some rebuttal unless counsel or just one more on my call on knowingly. And you said this is not a typical trespass statute. What do we do with the penalty provision? It's one year, the misdemeanor that feels more like a federal version of trespass than like a statute that's directed at putting the president's life in danger. And and and that points towards not requiring knowingly? Correct. Well, again, treating treating the presence of the protected person as more like a jurisdictional element. Well, again, I'm like the government of the offense. Yeah, I think, again, that you can't find language plainer. And and we shouldn't be, you know, coming up and trying to make inferences or presumptions about what Congress is thinking when we know what they're thinking because they said it. So that's my position on that. So we would ask the court to vacate and remand for entry of the judgment of acquittal. Thank you. Thank you. Good morning, Your Honors, and may I please the court, Dan Lammers for the United States. But the evidence in this case was sufficient for the district court to convict Coy Griffin of violating Section 1752 A1. In terms of the statute's knowledge requirement, the Supreme Court has repeatedly made clear that whether a criminal statute requires the government to prove that a defendant acted knowingly is a question of congressional intent and requiring the government to prove that the defendant knew the particular Secret Service protectee who is located within the restricted area runs afoul of any inference of congressional intent for a statute designed to protect the president from assassination and to protect other Secret Service protectees, where knowledge of presence would tend to make those people less safe rather than more safe. And for that reason, the best understanding of how the statute operates is that a defendant has to know that he is in a posted, cordoned off, or otherwise lawful authority to be there and nothing more. Those two. And there has to be proof that one of the three conditions in the definitional provision was in fact present. Yes, Your Honor, in terms of the actus reus, but not in terms of the mens rea. I mean, text is your biggest obstacle here. We have rehave, we have staples, we have McFadden, we have, you know, effectively case after case with explicit knowledge requirements and the Supreme Court applying it all the way down. That's true, Your Honor, but there are also cases like this court's recent decision in Morgan, where the court has not applied knowingly to a statute's element, where it's in a special context that suggests that Congress didn't intend that result. And ultimately, all of these knowledge cases, in terms of how far down into the statute you read that requirement, turn on congressional intent. And here, although in other cases, the Supreme Court has read knowledge to apply throughout. Here, there are strong indicia that Congress could not have intended that result to make, you know, I mean, the Supreme Court has talked about the valid, even overwhelming interest in protecting the safety of its chief executive. Before you get to that, do you have a textual argument? I mean, let's just walk through it. The operative text is the adverb knowingly, then there's the verb enter, and then there's the direct object of the verb, which is the restricted building or grounds. And you agree that the adverb extends to the direct object, right? Yes, Your Honor, we do. Okay, so then the question is what does restricted building or grounds mean? And that's a defined term, right? I agree, Your Honor, but I think here, the difference between, say, this case and McFadden is the statutory history. Let's just, sorry, let's just go through text, and then I'll let you broaden the focus. Right, so we have some, this direct object, which is the defined term. You look in the definition, and the key noun is area, right? And it's preceded by adjectives, posted, cordoned off, otherwise restricted. You agree the knowingly element applies to all of those adjectives, right? The person has to know that the areas posted, cordoned off, or otherwise restricted. We do agree with that because of the statutory history. Okay, and then after the word area is the dash, which says there's something significant to follow, and then there are these three possibilities, which are basically long, adjectival, prepositional phrases modifying the word area. Which have further sub-definitions that the defense doesn't seem to argue knowledge further applies to, which suggests that there's some cutoff within the statute. You know, within... What are you referring to, the further sub-definitions? Within subsection C1b, it says, were the president or other person protected by the Secret Service? And then C2 defines the term other person protected by the Secret Service, meaning any person who the Secret Service is authorized to protect when such person has not declined such protection. And the defense has never argued that knowledge extends to a defendant's understanding that the particular protege has not declined such protection, for example. So, even they seem to recognize implicit cutoff to the knowledge requirement in the statute. I'm sorry, I just lost you. Where are you in the statute? So, C1b says, of a building or grounds where the president or other person protected, and then C2 defines the term other person protected by the Secret Service, to mean any person who the Secret Service is authorized to protect when such person has not declined such protection. And the defense doesn't argue that knowingly goes all the way down to hasn't declined such protection. Well, and C2 even has further cross-reference to Section 3056, which is defined to the United States Secret Service is authorized to protect. That's true, Your Honor, or by presidential memorandum. And so, the defense seems to recognize that there's some cutoff within the knowingly requirement to where it does not travel. And the statutory history is that these terms used to be within the criminal provision itself. So, A1 used to contain of a building or grounds where the president or other person protected by the Secret Service is or will be temporarily visiting. And then it separately said that it criminalized entering a building or grounds so restricted in conjunction with an event designated as a special event of national significance. And so, the fact that Congress moved those provisions out of the crime itself to a separate definitional provision, at the same time it eliminated the statute's willfully requirement, you know, further underscores its intent not to require a defendant to know the underlying fact that makes the area restricted. So sure. I mean, the fact that it used to be in the primary text also supports an argument that this is just organizational and that, you know, without affirmative indication that the knowledge was somehow deemed as inappropriate, or the mens rea deemed as inappropriate to apply. I'm not sure that that gets you much. At the very least, it, you know, moves this requirement away from the knowledge requirement. At the same time, Congress eliminated the willful requirement. So what's the constitutional basis for this statute, the congressional power? I had that question leading up to this, and I'm not sure of the answer, but I think it's the necessary and proper clause to protect the chief executive and other people deserving of protection. It doesn't seem like the Commerce Clause is the jurisdictional basis. The defense not challenged. I think the legislature refers to the General Welfare Clause. That may be right as well, Your Honor. I'm not great with constitutional jurisdiction. The defense hasn't challenged it here. I'm not aware of any defendant who's challenged the jurisdictional basis for Congress enacting the statute. No, it's more a question I think that could be helpful, or the answer could be helpful to you, to the extent that, you know, as in FEOLA, the type of crime is one that's typically dealt with at the state or local level. And here there's a federal interest in a particular protection of particular areas based on, you know, the three interests that are listed. Yes, I agree, Your Honor. We made that argument in our brief that these designated areas are akin to jurisdictional elements and that they don't criminalize otherwise innocent conduct. That by requiring that a defendant know that he go into an area that is off-limits, posted, cordoned off, or otherwise restricted, and know that he is without lawful authority, that's all that's necessary to criminalize otherwise innocent conduct. And the fact that the defendant knows the president is there, knows it's the White House, knows it's a restricted in conjunction with an event designated as a special event of national significance, is irrelevant to the criminal mens rea. About that C1C, that in conjunction with the event designated as a special event of national significance, why wasn't that the argument? Is there some process for designating a special event of national significance that wasn't undertaken here? I believe that's right, Your Honor. The Secret Service, there are references to the Secret Service having the ability to so designate something. I'm not aware of that designation occurring here. In fact, I'm not aware of when that designation is ever employed. But the legislative history suggests that because the Secret Service is responsible for protecting the president and other protectees, it also has some responsibility for protection at these events. And that's why this initially separate provision was included within the statute. What if the Secret Service and the Capitol Police had internally declared the U.S. Capitol grounds to be restricted? And you're not arguing that there's no need to have something like posted cordoned off or otherwise restricted? No, Your Honor. I don't actually think there's that much daylight between the defense and us as to what otherwise restricted means. The government recognizes that otherwise means either in a different or in a similar way, and then restricted means made less accessible. And so there has to be something that makes the area less accessible to other people. It doesn't have to be physically inaccessible. Posting doesn't make an area physically inaccessible. It's unclear that on-site public notice is required. I could have an area of my building restricted to me through an email I receive that's not posted on site. But regardless, this court doesn't have to explore the sort of contours of otherwise restricted because on January 6th, the Capitol grounds were surrounded by fences, multiple layers that had do not enter signs, and police were posted at the gaps in the fence. They weren't gaps. They were fenced off but posted behind the gaps in the Olmstead Wall. And that was sufficient to satisfy any possible definition of otherwise restricted. So if I were on January 6th, cutting across the Capitol grounds, leaving the courthouse and going over to visit a friend in Southeast, and I crossed over a part where the fences had been pushed back and just kept walking, I could have been arrested and charged for up to a year imprisonment. Yes, Your Honor. And we would have to prove that you knew you were not allowed to be there and knew you were without lawful authority at the time. And so that knowledge requirement is enough to allow for an expansive definition of otherwise restricted because the government bears the burden of proving that the defendant knew they were a place they weren't lawfully allowed to be. Same hypothetical, except the person just cutting corners is lawfully carrying a firearm for personal protection, 10 years. Yes, Your Honor. And although that may seem unfair, this is a statute designed to protect the president from assassination. And so if the Congress's intent was to err, it certainly would have been to err on the side of protection and not worry about the sort of unrealistic hypothetical of a person carrying a firearm in a place they know they're not allowed to be that is restricted. And of course, on January 6th, while there was a riot where people were attacking the Capitol, and police were protecting the Capitol with pepper spray, I mean, that person... It's not a compelling hypothetical on the facts of January 6th, I'll give you that. But we're to all of these arguably disturbing hypotheticals, right? That's true, Your Honor. But again, the intent of Congress is clear, and no one seems to dispute that it is to protect the president and other very important government officials from assassination assault. And that intent is furthered by requiring that a defendant have knowledge, but not know the factual basis that led to the area being restricted. I understand that. Clearly right as a descriptive matter, but that might be a two-edged sword for you. I mean, that tends to say that the real wrongfulness that Congress has in mind here is acts targeting someone like the president, rather than the garden variety trespass that arises if you just knowingly skip over the bike barrier. Well, the legislative history suggests that that's not true. That Congress recognized that when they first enacted the statute, that the Secret Service did not have authority to restrict an area at all. That they were dependent upon the vagaries of state law, trespassing charges, which sometimes would apply and sometimes would not, which they have no reason to know those details. And that this statute was meant to give the Secret Service that authority. And so, if that legislative history suggests that the intent is to sort of replace state trespassing law with a federal trespassing statute, which would suggest, again, that all the guilty knowledge necessary is know you're in a place you're not allowed to be, because that's the traditional understanding of state trespassing. Mr. Lynch, does the Secret Service ever do its own posting, you know, that says keep restricted area? Are there signs that they carry around that specify that it's a Secret Service restricted area? I don't know the answer to that, Your Honor. The cases, the few cases on the statute don't seem to suggest that any such signs exist. That because presidents travel so frequently and so quickly, that Secret Service works in conjunction with state and local law enforcement. And so, I'm not aware of any such signs existing, but that's simply by reading the cases and not through any other. I'm a little, that the standard of review issues seem to me perhaps a little more complicated than the briefing suggests. You argue that we should affirm so long as the low bar of sufficiency evidence is satisfied. But what if we were to embrace either of the defendant's proposed interpretations? First of all, we'd have to look at those de novo, right? Or clear error. I mean, you didn't argue that their failure to move for judgment of acquittal on the grounds that they're asserting today confronts them with a clear error standard of review. Plain error, Your Honor. We did not make that argument. I apologize if I overlooked it. But my understanding from as recently as this court's decision in Robertson is that the court's first task is to construe the statute properly, which is always de novo, and then to apply the next standard of review based on whether it's preserved. And here, I mean, at least in the local D.C. courts, sufficiency is always preserved. Right. And we have Hilly, which preserves it. It's a little more complicated because we also have Brainoso. But how could we, in this case, affirm a conviction in which the fact finder did not find each element necessary if we adopt the defendant's interpretation of the statute? I mean, the district court made no finding as to the defendant's knowledge that Vice President Pence was present. And aren't we looking at that if we accept their statutory interpretation, there would have to be enough evidence that it would satisfy harmless error that that wasn't articulated by the district court in its decision. I don't think that's right, Your Honor. The defense has not challenged the jury instructions. They've not raised the jury instructions. Well, the district court instructs itself. And so it didn't in advance give any, I don't think, any clear indication on the issue that's before us now. The defense could have pressed for the court to issue instructions, say what the instructions are, and then challenge this as an instructional error case. They did not. They've challenged it as a sufficiency case. And in a sufficiency case, even where there are jury instructions, as in Kitala, when the court evaluates the sufficiency of the evidence, it evaluates it the same as it evaluates it even when the jury has not made a finding, which is, could any reasonable jury have found this element? And I don't see why that would be any different in a bench trial than in a jury trial. Well, they've made the legal argument about knowingly, right? And you agree that's properly before us. Yes, Your Honor. So if they're right on the legal point, this is like a case in which there was instructional error, and there's a conviction that rests on, you know, the jury or judge didn't make all the findings that would have been necessary under the correct instructions. I don't think that's right, Your Honor. I think the way they framed it, which is as the district court goes through all of the legal issues and says quite clearly, right, the law does not require me to find that the defendant knew the vice president was on the ground. Yes, Your Honor. And under that legal construction, there's no occasion for him to make the finding one way or the other, and he doesn't. I agree, Your Honor. But the way I conceptualize this is it's as though the defense asked for a jury instruction to a jury, the court rejected it, and then instead of bringing an attorney, the court brought a judge, and Katala instructs us that the question there is whether there's enough evidence that a properly instructed jury could have found the element. No, no. Isn't it that you have to show beyond reasonable doubt that even with the correct legal interpretation, the defendant would have been convicted without the legal error? I don't think the government is to say when they bring a sufficiency challenge where the jury hasn't been instructed, the question is whether there was sufficient evidence for a properly instructed jury to so find. And here, if I could talk about the evidence, you know, the defendant was present at the Capitol for many hours. Let's tie this down and then let you talk about the evidence. I mean, you say they brought a sufficiency challenge, but the vast, I mean, sufficiency presupposes a legal standard, and the vast bulk of the brief is about legal standard. And you're right, they don't frame this as an instructional error, but it's a bench trial where the district court is effectively instructing itself, and that's what they're challenging. And I think this turns on the fact that they did not frame it as an instructional challenge. There's the party presentation principle. We've responded to the argument they made, which is a sufficiency challenge. And here, had the district court, you know, instructed itself that the requisite knowledge was knowledge of the vice president's presence, there was sufficient evidence from which the judge could have found that Mr. Griffin believed Pence was still president, or not so president, that's a Freudian slip, was still present at the Capitol, given all the rioters yelling things like, Mike Pence, we'd love to see you come out, or you better get your stuff together, you better get your stuff together, Pence. What about Nader, N-E-D-E-R? The government has to show, beyond reasonable doubt, that the defendant would have been convicted even without an error that the fact finder was, an error of law under which the fact finder was laboring. And as Judge Katsas has just said, it's clear that Judge McFadden said he wasn't requiring, he wasn't, he didn't feel obligated to find that the defendant knew that the vice president would be or was present. So it just seems to me that in that circumstances, as I understand existing law, that an issue that is not reviewed under the lower sufficiency evidence bar. Now, this is different from a situation like Hilly, where a further requirement was erroneously imposed. And there, the court does the de novo legal analysis of what the statute requires, and if there were too many elements, then one is, it's sufficiency evidence with respect to the unnecessary element is set aside, and the sufficiency analysis is protective on that ground. But here we have the inverse. My understanding of how this works comes from Katala and from this court saying that a bench trial, review of a bench trial is the same standard of review for a jury trial. I read Katala as where the jury is erroneously instructed and the defendant brings a sufficiency challenge. The question for this court is simply whether there was sufficient evidence had the jury been properly instructed. If I'm wrong, then we would request that the court remand to Judge McFadden to address the issue of the defendants. You seem to me in that situation that that would be the course of events. We don't believe it's required, but if the court disagrees, then. So you wanted to talk about the facts. So do you think if our view of sufficiency, your opponent's view of the law prevails and our view of how sufficiency works prevails, do you have an argument that the district court's failure to make this finding was neither? Or do you just want the remand for him to make the finding one way or the other? I think the facts are sufficient to prove Mr. Griffin's knowledge under a sufficiency standard, but they don't meet the Nader standard so that we would request a remand. And certainly not this court a remand to require acquittal, which is typically how sufficient if the evidence is sufficient. Typically, this court instructs acquittal, but here where the district court didn't have the opportunity in the first place to address what we think is incorrect legal standard. So that's review de novo. And so there is something other than just a sufficiency, or at least as we've been pushing you on our premises, the premises on which our questions are based. There's a legal issue. And if there's an error of law, then that instead of requiring acquittal, that would support remand. If the court finds that there was an incorrect legal standard, we think that unlike, you know, many of the rioters, there is sufficient evidence from which we could prove that Mr. Griffin knew that the vice president was present or believed he was present. And thus, you know, there's reason for a remand rather than a remand to instruct to enter acquittal. The defendant didn't mention Begay until the reply brief. Did you have anything that you haven't already said that you wanted to discuss about the context of Posted and Cordendaw? I don't think so, Your Honor. Again, I don't think that far apart from the defense that they just seem to require a level of notice that isn't supported by the definition of restricted, which is somehow made inaccessible in a different or a similar way to Posted and Cordendaw. For example, they say that a chalk line on the ground is not sufficient to give notice. We think it is, but because it is on-site visible notice that something is different about the area beyond. But regardless, that's not at play here given that the area was visibly publicly restricted in many ways on January 6th, and those restrictions were not removed lawfully, but were destroyed by, destroyed, moved, and trampled on by the mob. Thank you. Just had a few points I'd like to quickly run through. The NGOA, the district court, knew that counsel was raising these legal challenges because he thinks the government can't prove them. He implicitly ruled on one, and he explicitly ruled on the other. The court knows that the reason we're contesting, the reason we're making these legal arguments is we think the government can't meet that burden. And then when the NGOA time comes, trial counsel says that he's got a Rule 29 filing he wants to make, but that it, quote, doesn't cover all the issues. That's late on the afternoon. And then the next morning, there's a discussion about should we have the NGOA arguments now, legal arguments, and this is where the court says that there's no need to do this now, that as far as I'm concerned, I think that he's going to address it through the bench trial and his rulings. And as far as I'm concerned, I think you could appeal any conviction on either ground that you'd be entitled to, but I don't know that it makes sense for us to go through this twice. So I would say that it was well preserved. And the government's, I just, some of these are disconnected, but let me just run through. They say that child sex, they try to make it analogous to the child sex cases. And as Elizalde says, every statute protects someone. And there's clearly this very strong and unique historical tradition and exception to the mens rea requirement. There's strict liability in a lot of child sex cases, and that is very, very unique. Then the government says that relies on the moving of the terms into the argument would have been weaker before it was moved into a definition, because then the term knowingly would have had to travel down the clock, down the phrase to something past the first thing. There would have been something at the end that arguably the government could argue didn't get covered, just the where, you know. But when you put it into definition, that changes the whole meaning of what Congress is trying to do. On that point, could you just respond to Mr. Leonard's point that C-1B has its own cross-reference to C-2, and no one suggests that the adverb knowingly travels all the way through to C-2? Yes, I think the Elizalde opinion explicitly deals with that argument. It says that the point is just that you know the fact. And, you know, many statutes you have to get to, just like in the heroin example, you have to go through three places and then find the little subsection. Regardless of how far you have to go, the question is, do you know all the facts that make your conduct criminal? That's the fundamental question. That doesn't change. And I want to say a couple other things. You know, the chalk line, I don't understand how someone's supposed to know which side of the chalk line is the forbidden side. That just doesn't make any sense at all. On the question of whether the Secret Service ever uses signage, online you can find, like, these signs that look like this. They have a Secret Service logo. That's a sign. You can look up Mar-a-Lago signs, for example, and you can see that they say, you are entering a restricted building and ground, in quotes, as defined in that sentence, isn't relevant. Then it says, persons entering or remaining in this area without lawful authority are in violation of federal law and will be subject to arrest and prosecution. So they do have these signs, and there's no reason they can't be posted. But we're not requiring them to have these signs up. We're saying that if they don't have the, they don't, person, they can't prove that the person knows that it legally qualifies, they can prove the facts instead. And they're saying we didn't raise the jurisdictional, I mean, the instructional error, but the court did reject our argument on these legal issues. And we did say, as an alternate relief in our opening brief, we say, given the district court's legal errors in interpreting those elements, a remand is required for the district court to weigh that evidence and determine whether those elements were, in its view as fact finder, established beyond a reasonable doubt. So that is, I guess we didn't use the word instructional, but that's what I was trying to do there. And I think the court has picked up exactly that they are reading Hilly backwards. I mean, this isn't a situation where there was an extra element that was wrong, and we're trying to get the evidence weighed against the wrong element. No, we're saying we want the elements weighed against the right element. So for all these reasons, we would ask for the court to remand for entry of judgment of acquittal and in the alternative remand for the district judge to thank you. Thank you. The case is submitted.
judges: Pillard, Katsas, Rogers